WILLIAM HILL *et al.*

*v.*

JOSEPH HILL *et al.*

*Filed at Mt. Vernon January 25, 1887.*

DELIVERY OF A DEED—*what to be so regarded.* A father made a deed to his son, and upon acknowledging the same, requested the officer taking the acknowledgment, to hold the deed for his son until the death of the grantor, which the officer declined to do. The grantor expressed confidence in his son, but feared his son's wife might have him, the grantor, dispossessed if she knew of the conveyance, and asked if he could not place the deed where his son might find it after his death, and was informed by the officer that this might do. It was *held*, that if the father, before his death, placed the deed in his son's trunk, where it was afterwards found, that was sufficient to show a delivery of the deed by the father in his lifetime.

APPEAL from the Circuit Court of Franklin county; the Hon. R. W. McCARTNEY, Judge, presiding.

Mr. GEORGE C. ROSS, and Mr. CHARLES H. LAYMAN, for the appellants:

The delivery of a deed is essential to its validity. 3 Washburn on Real Prop. 282; *Byars* v. *Spencer,* 101 Ill. 432; *Jordan* v. *Doris,* 108 id. 430.

Nor can a deed undelivered take the place of a testamentary devise. *Cline* v. *Jones,* 111 Ill. 569.

A will takes effect only on the death of the testator. A deed of conveyance must be operative, if at all, during the life of the grantor. Lewin on Trusts, 124.

The grantor of land must lose all control over it by the transfer and delivery of the deed. *Bryan* v. *Wash,* 2 Gilm. 557; *Byars* v. *Spencer,* 101 Ill. 433.

It must be delivered in the lifetime of the grantor. 3 Washburn on Real Prop. 293.

Mr. F. M. YOUNGBLOOD, for the appellees:

The evidence shows that Green B. Hill intended to deliver the deeds so as to pass the title before his death, and they being found, after his death, in the possession of the grantees, the presumption is that they were delivered by the grantor, or placed by him, in his lifetime, within the possession of the grantees. The burden of proof was on complainants to show the deeds were never delivered.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill filed by the heirs and the widow of Green B. Hill, deceased, for the partition of, and assignment of dower in, lands, of which it was averred the said Green B. Hill died seized. The bill alleged, that on August 1, 1881, the said Green B. Hill caused to be made two deeds, which purported to convey to Preston · Hill, one of the defendants, a certain part of the lands, and to Joseph Hill, another defendant, the rest of the lands; that the deeds were signed by the said Green B., but never delivered; that at the time of his death he had the deeds in his possession, and, some time thereafter, Preston and Joseph Hill broke open the private trunk of the said Green B. Hill, and took therefrom the deeds, and had them recorded. The bill prays that the deeds be set aside as clouds upon the title. Upon final hearing, on proofs taken, the circuit court dismissed the bill as to all the complainants except the widow, and decreed and assigned to her dower in the lands. The complainants, heirs, appeal.

The only question arising here, is as to the delivery of the deeds. Green B. Hill died February 27, 1885, eighty years of age. On November 15, 1881, he was married to the widow he left surviving him. The date of the deeds, and their acknowledgment, is August 1, 1881. The magistrate who drew and took the acknowledgment of the deeds, testifies that after he took the acknowledgment of Green B. Hill to the deeds,

he gave them back to him; that at first said Hill requested him to keep the deeds, and deliver them to Preston and Joseph Hill when he died, which witness declined to do, telling him he must deliver the deeds to make them effectual; that he then asked witness if he could not place the deeds where the boys could get them at his death; witness said that might do. He said he was not afraid of Preston and Joseph, but if he delivered the deeds to them, their wives might find it out, and he would be put out of house and home; that he wanted to retain the place as long as he lived; that he wanted Preston and Joseph to have it; that he finally said he would take the deeds, and put them where the boys would get them. Another witness testifies to Green B. Hill saying, about two or three weeks before he died, that he would put the deeds where the boys would get them when he was gone; and Joseph Hill testifies to the like statement. Latterly, the said Green B. Hill was separated from his wife, and lived with Preston Hill, in his family, on the place which was included in the deed to Preston. Preston paid him rent for the land. A few days before his death, Green B. Hill went from Preston's to the house of a son-in-law, Cockrum, where he died. His trunk was at Preston Hill's house. He had the key to the trunk, and the day before his death had requested Cockrum to take the key and go and get the money from the trunk to pay the taxes on the land. Two or three months before his death, Green B. Hill wanted to sell the lands to a neighbor, and give the proceeds to Preston and Joseph, asking $10 an acre for the land. His administrator, about nine days after his death, found his trunk. It was locked, and Cockrum gave him the key, and he unlocked it. He found in the trunk some old deeds, but not those to Preston and Joseph. The testimony shows that a short time after the death of Green B. Hill, Joseph Hill went to two or three different neighbors, and got from them keys, and a bunch

of trunk keys, to open a trunk with. Preston Hill testified that he, on March 4, 1885, found the deeds in an old trunk of his, at home where he kept all his papers and his wife kept the children's clothing; that he had no key to the trunk. We think the question of the delivery of the deeds turns upon this point: whether Green B. Hill himself placed the deeds in the trunk of Preston Hill, or whether Preston and Joseph Hill, or either of them, got the deeds from their father's trunk, and placed them in Preston's trunk. If Green B. Hill put the deeds there, we think it establishes a delivery of the deeds.

Joseph Hill admits that he supposed the deeds were in his father's trunk, and that he did borrow keys for the purpose of opening the trunk and getting the deeds, but he explicitly testifies that when he went to Preston with the keys, the latter would not consent to open the trunk; that he never opened the trunk with those keys, nor did any one else; that the keys were not out of his pocket from the time he borrowed them until he returned them; that he never opened his father's trunk, and he did not know that any one else did. Preston Hill, too, testifies that Joseph did not open the trunk. The repeated declaration the father had made, that he would leave the deeds where Preston and Joseph would get them when he was dead, favors the idea that he might have placed them where they were found by Preston in his trunk; and a finding that he did place them there, we are of opinion, was so sufficiently supported by the evidence that it should not disturbed.

The decree will be affirmed.

*Decree affirmed.*